Let me call 22-2138 United States v. Maxey-Velasquez and Ms. Gorman, you may proceed. May it please the court. My name is Sarah Gorman and I represent the appellant Nicholas Maxey-Velasquez. I intend to reserve about a minute and a half for rebuttal but we'll see how that goes. Mr. Maxey-Velasquez's firearm did not have the necessary connection to another felony offense under United States Sentencing Guideline 2K2.1B6B and the district court erred by granting this four-level enhancement. The district court further erred by not granting a departure for acceptance of responsibility under United States Sentencing Guideline Section 3E1.1. Now turning to the firearm enhancement with the connection to the felony offense. The key under 2K2.1B6B, according to the guideline commentary and this court in United States v. Marufo, is whether the firearm facilitated or had the potential to facilitate another felony offense. Counsel, can I ask you a question first off about the drug possession? Yes. Why doesn't justice, our case justice, control the resolution of that issue? Well, justice does and both the district court and the government relied on justice and justice says that the question is whether the possession of the firearm facilitated the offense because it emboldened Mr. Maxey-Velasquez to commit the offenses. But justice also says that emboldenment is not always present when firearms are near drugs. Was there an emboldenment finding made in this case? The court did not cite specific facts as to how Mr. Maxey-Velasquez may have been emboldened. The court, in its opinion, stated that there was a potential for emboldenment but specific facts are necessary. And that's what I argued in my brief under United States v. Bishop, which was an 11th Circuit case, that that case specifically says that mere proximity between a gun and drugs possessed for personal use. And in this case, there's no question that the substances that were found were for personal use. There was no argument as to drug trafficking. But when all we have is mere proximity to support the enhancement without a specific finding that the gun facilitated or had the potential to facilitate the drug possession, now there was no specific finding made by the district court. Did you ask the court below to specifically make a finding on emboldenment? I did not, Your Honor. As I interpreted what the district court was saying is that it may be true in some, maybe most, circumstances that a gun in personal use quantities would not embolden or facilitate. But you can certainly imagine a situation where somebody in possession of illegal drugs in his car may feel that he should have some protection against theft or robbery, et cetera. Maybe he's going to buy some more personal use. So it seems like in some circumstances you could imagine that the gun facilitated or emboldened the defendant from being in public. It's not at home in a bedroom. It's in a car driving around Albuquerque or whatever. Well, and Your Honor, I think that certainly circumstances can be imagined. But I think in this case, when we're talking about this enhancement, it's a four-level enhancement. That's a significant enhancement. And it can't be left to speculation or imagination or guessing. There must be specific facts. And actually, turning to the drug issue, as an initial matter... We also have a stolen trailer. That's correct. And I will certainly address that. But regarding the drugs, the district court's finding that the substance is found in Mr. Maxie Velasquez's wallet and the backpack. And to remind the court, Mr. Maxie Velasquez was pulling out of his driveway. There was an officer that arrested him based on information that the officer received about possession of firearms. Not about drugs, not about the utility trailer. Those were found incidental to this arrest. And the substances were found first in a wallet, in a small baggie that was less than a gram, so less than a quarter teaspoon found, of what was alleged to be methamphetamine in the wallet. And then on the floorboard, the passenger seat floorboard, there was a backpack with another baggie with alleged cocaine, again, less than a gram. So, the only testimony that the district court heard at the sentencing hearing was from Sergeant Holloway, who testified that all he did was a visual inspection of the drugs. And that this does not meet the preponderance of the evidence standard to even determine that these substances were drugs. What case are you relying on for that proposition? Because it seems that we have recognized, at least in some circumstances, that lay testimony is enough. Well, in fact, this court and the government cite Sanchez de Fundora, which is a case that actually what that states is that when we're talking about an instance where there's no chemical testing, lay testimony and evidence needed to identify the substance, they actually list a combination of factors to be used. Physical appearance is one of those, but did the drug produce the expected effects that the substance would? Was it used in the same manner? Was a high price paid? Was it called by its name? All of these factors. But that wasn't sentencing, right? That was, I'm sorry, was that in the sentencing context? No, this was in the trial context. But I don't have any case that says that you import that framework into the sentencing context. There's no specific case that states that. But I would say to the court that the visual inspection on its own is not enough. And even the facts of Sanchez de Fundora, that co-defendant in that case actually sampled the substance. So you had more than just visual inspection. And there was actual chemical testing in that case. However, if the court were to find that there was the preponderance of the standard, a preponderance of the evidence standard met, then going back to the proximity of the gun, I would submit to the court that there was no specific finding that Mr. Maxie Velasquez was emboldened. And in fact, in the district court opinion, Judge Johnson references that guns and drug distribution, but we didn't have drug distribution here. We had possession and there was no dispute as to that amongst the parties. So, again, I would submit to the court that the possession was incidental, just like what the court states in United States v. Marufo. It can't be the result of accident or coincidence. And this is very similar to United States v. West, which is a Third Circuit case that I cited where the court rejected the emboldenment theory when a revolver was found in a backpack in the drunk and then I wanted to ask you one more question. I know you want to move on to the to the trailer, but is it a problem for your argument that you didn't specifically object to the lack of an emboldenment finding in this case? I don't think so, Your Honor, because I because I did preserve that the government had not met its burden with the preponderance of the evidence for the enhancement as a whole. And I think that encompasses the emboldenment argument. That's that's a nuance of the argument. But I think I certainly preserved that below. Now, turning to the utility trailer, the same question as to emboldenment is something that the court is to consider. But just because we have a presence of a firearm with the receipt of stolen property, that does not mean that the firearm facilitated the receipt of the utility trailer. Now, the district court said that the defendant was aware of the substantial risk that the lawful or rightful owner of the trailer might recognize it and confront him. But again, that's speculation. There was nothing to the naked or the public eye to indicate that. Why is this that matter in this context that you seem to suggest in your argument that if there's no obvious indication that the trailer is stolen, then that that's not sufficient. But it was reported stolen that that day or the day before or something, right? It was reported stolen that morning. Why doesn't that satisfy sort of what Sanchez is getting at? Well, I think what Sanchez gets at is that there was an obvious indication with the law enforcement approach, they would have immediately seen that this vehicle was that vehicle was stolen and that the defendant would need to defend himself. There was nothing indicating that in this case. And I think the other issue with this is we're talking about receipt of stolen property. We're not talking about burglary. We're not talking about robbery where there would be an inference of force which would seem to go towards emboldenment. And it was the government's burden to produce that type of evidence. When was this stolen? We know that the receipt was, I mean, the report was made that morning. We don't know when it was actually stolen. If Mr. Maxie Velasquez knew the owner, if the owner knew him, all of that, those were facts cited by the government in their in their case law. But we don't have those here. And that was their burden to present. And I think that with both of these cases, I'm sorry, with Mr. Maxie Velasquez's case, it's very similar to United States versus Gallegos, which is a district court case from the District of New Mexico, where in that case, a man was arrested by them when he committed an assault against a police officer. But that court found that was incidental to the assault. He rammed his car into a police officer's car. And that's that's a note because that was an actual altercation. And the court found that that connection was not enough to satisfy the enhancement. And you're relying on Gallegos principally for facts, for analogous facts. It doesn't have a real persuasive value otherwise. Right. I mean, that's correct, Your Honor. But I would say that the court could still use that that same analysis in analyzing Mr. Maxie Velasquez's case. Where I'm really stuck is how you get around Sanchez. You know, it seems that the way my understanding of your argument, correct me if I misunderstand it, is that if there is no obvious indication that the vehicle is stolen, then that doesn't satisfy what Sanchez is getting at. And here I'm struggling with the fact of the the trailer having been reported stolen that day. Well, and I think that that's something that officers would not have had information regarding the possession of the firearm that led them to Mr. Maxie Velasquez. So it wasn't something that immediately stuck out at them. But I'm not saying that an obvious nature of the vehicle is the only way that that connection can be made to apply the enhancement. I think you have to look at the totality of the circumstances. And I think in this case, we have just the presence of a firearm, nothing to indicate that it actually did embolden him or that there were actions taken to that effect. So with that, Your Honor, I would submit that the district court erred in enhancing Mr. Maxie Velasquez's statement regarding the drug possession and the utility trailer. I would turn now to the issue of acceptance of responsibility. Mr. Maxie Velasquez should have been granted a departure for acceptance of responsibility. Now, the guideline commentary and the application note for Section 3E1.1 are the most direct evidence of the Sentencing Commission's intent regarding acceptance of responsibility. And the application note gives a list of factors that I cited in my brief. But the majority of the commentary focuses on whether the defendant truthfully admitted conduct associated with the offense and making sure that the defendant hasn't put the government to the burden of trial. In fact, there's an entire paragraph in the commentary talking about the importance of entering a plea of guilty and doing so in a timely way. And that particular factor is characterized by the commission as being significant evidence of acceptance of responsibility. And the Sentencing Commission doesn't put language in haphazardly. I think that that's important because it's the only factor where they characterize it as evidence and devote an entire paragraph to it. So I would submit that that is evidence that the court must weigh more heavily. Now, the government and the court stated that Mr. Maxie Velasquez's alleged possession of suboxone and drug paraphernalia was inconsistent with acceptance of responsibility. But the court only cites to United States v. Patron Montaño, which is a completely dissimilar case, because in that case, that defendant lied about involvement of a co-conspirator with the charged conduct, with what that defendant pled guilty to. Doesn't Finney and Price, though, stand for the proposition that we can look at unrelated? I'm sorry, that what? Finney and Price don't suggest we can look at unrelated conduct. That is correct. This circuit has determined that unrelated conduct can be looked at. And I would I would submit, though, that this case is similar again to a district court case, United States v. Valenzuela, where in that case, that defendant fought with another inmate and provided drugs to another inmate in between plea and sentencing. And the court stated that it still granted acceptance of responsibility and emphasized that accepting responsibility for the criminal conduct in the charge defense and doing so timely outweighed any potential unrelated conduct. So so my my question to you is, I thought you were making a legal argument on the interpretation of 3E1.1, sort of de novo, but it seems to me now that you're arguing more of a we're reviewing the weight the district court should or should not have placed on various components of acceptance. Is that your argument? That is correct. It's the latter. Yes. And Your Honor, I would just say that I did cite a Sixth Circuit case, which takes a different approach than this circuit as far as not considering unrelated conduct. But I think that this court can can certainly take into account this conduct, but it's not the factor that is determinative of acceptance of responsibility. The government suggests that the conduct is is actually related. It's the same. They make I think they make that point in their answer brief. Well, I think that that's, again, a speculation. We have the charge defense was possession of a firearm by a felon happened years before this offense. Here we have a traffic stop for a revoked driver's license that was revoked. And then we have the alleged possession of the box. And again, there was no charges brought on those case on those. So I would submit to the court that together, both when looking at the fact that this is unrelated conduct, that Mr. Maxie Velasquez truthfully admitted and timely so his conduct and did so without pretrial litigation, that all of that is the most significant factors to be considered by this court, together with his post offense rehabilitation, which is another factor this court may consider. And that was significant. Mr. Maxie Velasquez was able to progress from halfway house to sober living, to living on his own, and even released again to a halfway house, given his significant rehabilitation. In these circumstances, should we defer the district court in this determination? Maybe he's not compelled to have denied acceptance of responsibility, but he did find that here. Should we give deference to that sentencing choice? I mean, I think that that under clear air, I mean, the court must must assume that the district certain things with the district court. But I think that the court clearly erred in not accurately interpreting this guideline by giving the weight, the significant evidence of acceptance of responsibility to the truthful admission, to the timely admission of the charged conduct. And with that, Your Honor, my time is up. Thank you. Judge Baldock, are you able to hear adequately? I can. Thank you. May it please the court. Timothy Trembley on behalf of the United States. My request here for the court is simple, and that's that you affirm the district court's ruling in each of the contested aspects. There are primarily three as to the application of the B6B enhancement, which the defense just talked about. To the extent... Counsel, let me ask you a question, because I understand the burden was on you to prove by the ponderance of evidence, which is not a heavy burden. But she's arguing that you didn't produce enough evidence to show up the ponderance of I understand her argument and that that's how you get away from the discretion of the court. So if you would please indicate to me what you believe the evidence shows that justifies the court in this hearing and is ruling, I believe, on page five, he says the court also finds by ponderance of evidence that the defendant firearm has a potential facilitation of the stolen and chosen trader in our house possession. So she's saying that may be what we found, but you didn't show the evidence of that. So explain that to me. Well, Your Honor, what I think explains that is the testimony of an experienced law enforcement officer who came in front of the district court. He testified about where he found each of the substances. He testified to his training and experience. He testified that he had done hundreds of drug investigations and that he believed those substances to be consistent with methamphetamine and cocaine. I think that the district court considered that and put so in its order that the substances were authentic and that they had at least the potential to facilitate the possession of the firearm. And the things that he testified to were the fact that it was a handgun, which this court can and has considered as a relevant factor, the fact that it was loaded, the fact that it was accessible to the defendant, and its proximity to the drugs, which were pretty close within the same seat, both on the passenger seat. And so as to the potential to facilitate, I think each of those facts supports, at least from a ponderance, that the firearm had the potential to facilitate the drug offense. And as to, he also testified as to the trailer, which he identified as stolen, which was reported stolen, and which the defendant admitted to stealing that very morning. And so each of those facts, I think, implicate this enhanced dangerousness, as talked about in Sanchez, that either law enforcement will identify him, which they did, or the true owner may identify him hauling around his stolen trailer in broad daylight. And that would be the potential facilitation for that firearm. So as to each of those, I think there are facts that are plainly sufficient. And to the extent that the defendant argues that the evidence doesn't show that it did indeed facilitate, that's not what the court is required to find here. It's only required to find that it had the potential to facilitate. So what is the bridge then? I mean, potential to facilitate seems like it needs to have some limiting principle, right? So here, for the drugs, you have our case justice, which says that a firearm can embolden, but emboldenment, we're not assuming that emboldenment is present just because a gun is near the drugs. So what is the evidence on emboldenment here? I think the evidence for potential for emboldenment has to do whenever somebody brings drugs out into public with a loaded handgun on their person. I think that that evidence does show the potential to embolden him. And the case law that the court references in terms of 10th Circuit case law that talks about when is there a firearm and drugs present where there may not be emboldenment, typically we're not talking about scenarios where somebody is out in public, where they're out and about with these things, obviously, on their person. We're talking about scenarios where they're maybe inside of their house and there's a gun and drugs found somewhere in a house. That's really where we get into more of the analysis of is this drug trafficking where that might play into it? Or is this simple possession and maybe they're totally unrelated? Or I think there was another scenario that I cited in my briefing where the firearm was obtained, we can verifiably say the firearm was obtained after the drugs were possessed and didn't have anything to do with that. And the court found, well, that's not sufficient. Would, under that logic, though, would every time a defendant's in a car in public with personal use drugs and a gun, that that has the potential to facilitate? I would say that the court could say at least there is not clear error any time a district court finds that a person out in public in a car with guns and drugs accessible, loaded, ready to go. I think that this court would have a difficult time saying that there's clear error. And in fact, the court references that injustice where the Tenth Circuit says it will rarely be clear error if the district court finds the possession of a firearm facilitated or had the potential to facilitate the drug possession. And then I think unless the court has additional questions on that, that basically addresses my argument as to the B6B. I would also note that as to the authenticity of the substances, the court did also reference the other paraphernalia that was located in the vehicle. So not only was it two distinct substances that the officer, an experienced officer with over a decade of experience in several hundred drug investigations, identified the substances, but he also coordinated that with the other items that were located in the vehicle which were consistent with drug use. And then to address the acceptance of responsibility issue, I think, again, there's quite a bit of deference. And in this scenario, the 3E1.1A reduction is entitled, the district court is entitled to great deference. You're not contesting that Mr. Maxi Velasquez did not take the case to trial, that he pled. All of those things are obviously true, right? Yes, ma'am. In your brief, you seem to question the sincerity of his elocution. I thought that was really inappropriate, and maybe I don't understand what that goes to in the analysis. I think nothing. Is that fair to say? I think it has very little to do. I think his elocution was brief, and I think it may go to the extent of his truthful discussion of the facts. I mean, we do have a lot of contested factors here. But the district court never found that there was any issue with the sincerity of the elocution. And so really, the only issue here is whether this additional unlawful conduct takes him out of acceptance. Is that fair to say? Yes, ma'am. I think that is the main issue here. And I think that the court's determination will not be disturbed unless it is without foundation. And the facts here certainly seem to indicate a lack of responsibility. And although it is a factor that's weighed against his timely acceptance of responsibility, which I concede here. I think it appears he did timely plead guilty, and there weren't any other factors that played into it. I think the primary factor that the court considered was this new criminal conduct. And the testimony that was provided by the pretrial services officer about this new it really was. It wasn't simply a prescription for Suboxone. It was the way that it was packaged with the inference that it was to be taken into potentially a facility. Because there were syringes wrapped in a balloon. So I'm having a little bit of trouble understanding the factual basis for that component of the district court's reasoning. That seems really speculative. That even if you have quantities that are not just personal use, that the court says certainly if the defendant is going to be entering custody, that quantity can be very valuable. Did you agree that that's just speculation? I think that there is some speculation there, Your Honor. But I think that it's unusual to see anything packaged so tightly, so wrapped in a balloon. That's typically the way that we see contraband packaged when it is taken from a person as they're entering or after they've entered custody. Was that testimony presented to the district court? I believe it was that there was some testimony from the pretrial services officer that that was the implication he understood from it. And that might have been what was relayed to him from the officer who was actually on scene. And the exhibits are there. I think I attached them with my briefing so that the court could see them as well. But it is tightly wrapped. It is a large amount of suboxone. It's also accompanied by several syringes. So I think that those factors all factored into the court's assessment. And really what we're here to talk about is, did the court do the right assessment? And did his evaluation of the factors, even if Your Honor might disagree with how he weighed the factors, that's not what the court is here to do. And it's just to determine whether or not there was clear error. And I submit to you that there was not. Thank you. Thank you, counsel. I think the time's expired. Counsel are excused. And the case is submitted.